UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| MARK B.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-cv-00097-KMB-SEB |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Mark B. applied for disability insurance benefits and supplemental security income from the Social Security Administration ("SSA") on July 6, 2020, alleging an onset date of September 14, 2019. [Dkt. 14-2 at 18, 21.] His applications were initially denied on September 14, 2020, [dkt. 14-3 at 40, 47], and upon reconsideration on March 25, 2021, [*id.* at 59-60, 68-69]. Administrative Law Judge ("ALJ") Colleen Mamelka conducted a hearing on September 21, 2021. [Dkt. 14-2 at 38.] The ALJ issued a decision on October 6, 2021, concluding that Mark was not entitled to receive disability insurance benefits or supplemental security income. [*Id.* at 32.] The Appeals Council denied review on May 25, 2022. [*Id.* at 2.] On July 27, 2022, Mark timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). [Dkt. 1.][2]

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

[2] As the ALJ explains in her decision, Mark "previously filed an application for a period of disability and disability insurance benefits in December 2017 and Administrative Law Judge Deborah Giesen issued a decision on September 13, 2019, finding that [Mark] was not disabled." [Dkt. 14-2 at 18.] However, "[i]n this case, the record contains new and material evidence relevant

## I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

---

to periods not adjudicated in the prior ALJ decision," so ALJ Mamelka made "different findings regarding the claimant's severe impairments and residual function capacity than made in ALJ Giesen's decision." [*Id.* at 19.] ALJ Mamelka therefore explained that "[a]ny reference herein to the prior decision or evidence is for background or clarification purposes only and is not intended to reopen or revise that decision." [*Id.*]

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also

appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II. RELEVANT BACKGROUND

Mark was 51 years old on September 14, 2019, which is the amended alleged onset date. [Dkts. 14-2 at 21; 14-3 at 34.] Mark has a high school education, [dkt. 14-2 at 30], and he previously worked as a motor vehicle assembler, packaging line attendant, and assembly machine tender, [*id.* at 30.][3]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and 20 C.F.R. § 416.920(a)(4) and concluded that Mark was not disabled. [*Id.* at 31.] Specifically, the ALJ found as follows:

- At Step One, Mark had not engaged in substantial gainful activity[4] since September 14, 2019, the amended alleged onset date. [*Id.* at 21.]

- At Step Two, Mark had the following severe impairments: history of lumbar fracture status post T11-L3 fusion, lumbar radiculopathy, sacroiliitis, diabetes mellitus with hyperglycemia and neuropathy, neurogenic bladder with urinary retention, bipolar disorder, opioid dependence, and borderline intellectual function. [*Id.*]

- At Step Three, Mark did not have an impairment or combination of impairments that met or medically equaled the severity of one the listed impairments. [*Id.* at 24.]

- At Step Three but before Step Four, Mark had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can occasionally climb ramps or stairs, stoop, kneel, crouch and crawl. [Mark] can climb no ladders, ropes, or scaffolds. He cannot work around unprotected heights, dangerous moving machinery, wet surfaces or vibration. [Mark] is limited to simple routine tasks, with occasional simple, work-related decisions and routine work-place changes. [Mark] cannot work at jobs with fast paced production or tandem work (to accommodate bathroom breaks)." [*Id.* at 26-27.]

---

[3] The relevant evidence of record is set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the undersigned's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- At Step Four, relying on the testimony of a vocational expert ("VE") and considering Mark's RFC, Mark was unable to perform any of his past relevant work. [*Id.* at 30.]

- At Step Five, relying on the VE's testimony and considering Mark's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed through the date of the decision in representative occupations such as retail marker, routing clerk, and cleaner. [*Id.* at 31.]

### III. DISCUSSION

Mark makes two assertions of error regarding the ALJ's decision: (1) the ALJ erred in failing to offer a single word of analysis as to whether Mark's combined spinal impairments met or medically equaled Listing 1.15, and (2) the ALJ failed to adequately support her conclusion that Mark could stand and walk for six hours per workday and required no time off task due to urinary retention caused by neurogenic bladder. The Court will address the issues as necessary to resolve the appeal, beginning with the first because the Court finds it to be dispositive.

**A. The ALJ erred by failing to offer more than a perfunctory analysis of Listing 1.15.**

Mark claims that the ALJ's finding that his "physical condition does not meet or equal the criteria of Listings 1.15, 1.16, 1.18, 6.00, 9.00, 11.14 or any other listing" does not provide the Court with the ability to meaningfully review the ALJ's Step Three listings analysis.[5] [Dkt. 18 at 10.] Mark claims that he exhibited each of the criteria under Listing 1.15 ("Disorders of the skeletal spine resulting in compromise of a nerve root(s)"), but the ALJ did not confront evidence that he met this listing, including his treating physician's opinion that he required a walker for safe ambulation. [*Id.* at 11, 14.] Had the ALJ confronted this evidence and provided a meaningful discussion on the same, Mark argues that the ALJ might have concluded that he met or medically equaled the criteria for Listing 1.15. [*Id.*] According to Mark, the ALJ's one-sentence conclusion

---

[5] Despite the ALJ finding that several listings were not met or medically equaled, Mark only specifically challenges the ALJ's finding as to Listing 1.15. Accordingly, that is the only listing that the Court will address.

5

was not the "more than perfunctory" explanation required under the relevant Seventh Circuit caselaw. [*Id.* at 14-15 (citing *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)).]

In response, the Commissioner admits that the ALJ's discussion of Listing 1.15 was "terse" but nevertheless claims that remand is not required because Mark failed to prove that he had a *per se* disabling back condition. [Dkt. 21 at 1, 7-8.] The Commissioner points out that Mark was represented by counsel at his hearing and did not produce any opinion that he met or equaled Listing 1.15, nor did Mark's counsel make such an argument. [*Id.* at 8.] Accordingly, the Commissioner argues that the burden of articulation is reduced when a claimant's attorney does not specifically identify a listing at the hearing, and an ALJ may offer a perfunctory analysis of a listing if the claimant fails to show that he met all of the criteria of the listing. [*Id.* at 8-9.] The Commissioner provides a detailed analysis of various medical records in her brief and argues why this evidence shows that Mark cannot meet Listing 1.15. [*Id.* at 8-11.] Although the Commissioner acknowledges that she has supplied novel reasons for defending the reasonableness of the ALJ's decision, which would normally be a violation of the *Chenery* doctrine, the Commissioner asserts that the relevant caselaw necessarily implies that she may explain why the ALJ did not include a more detailed discussion at Step Three. [*Id.* at 13; *see also SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943).] Thus, the Commissioner takes the position that despite the ALJ's "terse" analysis of Listing 1.15, the ALJ's decision should be upheld because Mark cannot show that he met the requisite criteria under this listing. [*Id.*]

In reply, Mark rejects the Commissioner's defense of the ALJ's decision and contends that the Commissioner's arguments are an express violation of *Chenery*. [Dkt. 24 at 1.] Mark reiterates that "[t]he ALJ offered literally no explanation of her conclusion that Listing 1.15 was not met or medically equaled where [he] has demonstrated, at the very least, such a listing has arguably been

6

met." [*Id.* (emphasis removed).] Consequently, Mark argues that the Commissioner's post hoc rationalizations should not even be considered by the Court. [*Id.* at 1-2.] While the Commissioner argues that Mark's counsel did not explicitly argue for Listing 1.15 at the hearing, Mark asserts that the ALJ still had a responsibility "to investigate the facts and develop the arguments both for and against granting benefits." [*Id.* at 2 (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000)).] According to Mark, the ALJ knew that Listing 1.15 was implicated—as evidenced by her decision referencing it—but "gave no earnest explanation" for finding that Mark did not meet or equal its criteria. [*Id.*]

"Under a theory of presumptive disability, a claimant is eligible for benefits if [he] has an impairment that meets or equals an impairment in the Listing of Impairments." *Barnett*, 381 F.3d at 668 (citing 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1). Each listing specifies criteria that, if met, mean that the claimant is presumptively disabled. *Id.* (citing § 404.1525(a)). A claimant can also show that his symptoms "are equal in severity to those described in a specific listing" and be found presumptively disabled. *Id.* (citing § 404.1526(a)). "When evaluating whether an impairment is presumptively disabling under a listing, the ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Jeske v. Saul*, 955 F.3d 583, 588 (7th Cir. 2020) (internal quotation marks and citation omitted).

The listing at issue here is Listing 1.15 ("Disorders of the skeletal spine resulting in compromise of a nerve root(s)"). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.15. The criteria for Listing 1.15 are as follows:

> A. neuro-anatomic (radicular) distribution of one or more of the following symptoms consistent with compromise of the affected nerve root(s): (1) Pain, (2) paresthesia, or (3) muscle fatigue; and
>
> B. radicular distribution of neurological signs present during physical examination or on a diagnostic test and evidenced by 1, 2, and either 3 or 4: (1) muscle weakness;

(2) sign(s) of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root; (3) sensory changes evidenced by: (a) decreased sensation, or (b) sensory nerve deficit (abnormal sensory nerve latency) on electrodiagnostic testing; or (4) decreased tendon reflexes; and

C. findings on imaging consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine; and

D. impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following: (1) a documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; (2) an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movement, and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or (3) an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements.

*Id.*

In finding that Mark did not meet or equal this listing, the ALJ offered a single sentence at Step Three: "[Mark]'s physical condition does not meet or equal the criteria of Listing[] 1.15." [Dkt. 14-2 at 24.] The Court agrees with Mark that this finding, which the Commissioner acknowledges was "terse," is not sufficient. *See Barnett*, 381 F.3d at 670 (concluding that the ALJ's "two-sentence consideration of the Listing of Impairments is inadequate and warrants remand"). Although the articulation requirement at Step Three merely requires "more than a perfunctory analysis of the listing," *Jeske*, 955 F.3d at 588, here, the ALJ's finding that Listing 1.15 was not met or equaled had absolutely no analysis at all. Without any discussion from the ALJ explaining why Listing 1.15 was not met or medically equaled, the Court's ability to engage in meaningful review of the decision cannot occur and requires remand.

The Commissioner presents various novel arguments in her brief to argue that remand is not required because Mark allegedly cannot meet or equal the listing at issue here. Over the course

8

of three pages of her brief, the Commissioner cites and details evidence that she claims proves that Mark cannot meet Listing 1.15.[6] The problem, however, is that the ALJ did not offer any of these reasons in the decision, and the "Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace." *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012). Put another way, the Commissioner cannot advance "a novel basis for the ALJ's determination" on appeal. *Id.*; *see also Chenery*, 318 U.S. at 93-95.

Alternatively, the Commissioner claims that an ALJ may offer a perfunctory analysis of a listing if a claimant fails to show that he met all criteria under a listing, and the Commissioner may supply novel reasoning to explain why an ALJ's analysis at Step Three was not more detailed. The Commissioner cites *Sosinski*, *Jeske*, and *Wilder* as primary support for her argument, but those cases do not provide the support that the Commissioner wishes they did in Mark's case. *Sosinski* did not alter the "more than a perfunctory analysis" articulation requirement or create an exception to *Chenery*. *See Sosinski v. Saul*, 811 F. App'x 380 (7th Cir. 2020). While *Sosinski* did find that "even if the ALJ does not offer [more than a perfunctory analysis], we do not reverse if the claimant fails to show he meets the criteria for that listing." *Id.* at 381. But Mark has pointed to evidence

---

[6] For instance, the Commissioner claims that the November 2017 MRI showed no disc herniation, [dkt. 21 at 9]; despite Mark's treatment providers finding in April 2019 that an MRI may be beneficial to evaluate possible nerve root impingement, these providers found that imaging did not prove nerve root impingement, [*id.*]; Mark did not prove that he had positive straight leg tests in both the supine and sitting position, which is required to show that a specific lumbar nerve root is compromised, [*id.* at 9-10]; Mark did not establish that sensory or decreased deep tendon reflexes lasted or could be expected to last for the requisite 12 consecutive months, [*id.* at 10]; and Mark has not established a documented need for a walker, bilateral canes, or bilateral crutches, or a wheeled and seated mobility device involving the use of both hands, [*id.* at 10-11].

that he may meet the requirements of Listing 1.15.[7] [Dkts. 18 at 11-15; 24 at 3-7.] The Court is in no position to weigh raw medical evidence and decide whether certain medical findings meet or equal the listing's criteria, especially in light of the ALJ's failure to offer any specific discussion at all on Listing 1.15.

*Sosinski* must also be considered in light of the Seventh Circuit's decision in *Jeske*, which is a decision on which it relies. *Id.* (emphasizing that *Jeske* stands for the same "precise principle" finding that failure to provide "more than a perfunctory analysis" does not necessarily warrant remand). *Jeske* expressly noted that a court's "review is limited … to the ALJ's rationales; we do not uphold an ALJ's decision by giving it different grounds to stand upon." 955 F.3d at 587. Despite the ALJ's brief discussion of the listing at issue in that case, *Jeske* nonetheless found that remand was not warranted because "the discussion picked up in the next part of the ALJ's decision … [a]nd the ALJ's more thorough discussion—although located with the discussion of Jeske's RFC—explained what the evidence revealed about Jeske's condition and symptoms."[8] *Id.* at 589-90. Thus, *Jeske* affirmed the ALJ's decision in that case based on reasoning the ALJ provided in the decision and explained that it was "not violating *Chenery*'s command by looking at the ALJ's more thorough discussion of the evidence. Observing that an ALJ placed some of its step-three rationale with its discussion of a claimant's RFC does not give the ALJ's step-three determination new ground to stand upon." *Id.* at 590. The same conclusion cannot be made here in Mark's case,

---

[7] Specifically, Mark has pointed to specific evidence in arguing that he meets or equals Listing 1.15, including multiple straight leg raise tests, radicular pain, lower extremity muscle weakness on examination, diminished sensation and reflexes, and an MRI showing compression of the conus medullaris and "severe left-sided and moderate right-sided degenerative neural foraminal stenosis." [Dkts. 14-7 at 224, 424; 14-8 at 622; 14-9 at 10, 46, 102, 131, 146, 155, 163, 171, 175.]

[8] Although *Jeske* characterized the ALJ's initial discussion of the listing at issue at Step Three in that case as "brief," the Court notes that the ALJ in *Jeske* provided a much more thorough discussion than the ALJ's conclusory finding here. *Id.* at 589.

and, in fact, the Commissioner is not arguing that the ALJ's "terse" Step Three analysis was supplemented by a more thorough discussion of the evidence later in the decision. Instead, the Commissioner relies on arguments and reasoning that the ALJ did not provide in the decision at all, which the *Chenery* doctrine forbids this Court from considering.

*Wilder* also presented a different situation than the case at bar. *See Wilder v. Kijakazi*, 22 F.4th 644 (7th Cir. 2022). In *Wilder*, the claimant's attorney conceded at the hearing that the claimant did not meet or equal any listing, and the attorney even represented that he did not think there was a listing for the claimant's impairment. *Id.* at 649. On appeal, the claimant retained new counsel "who argued that the ALJ should have considered whether she met or equaled Listing 11.17," but notably, the ALJ in *Wilder* did not identify this particular listing in the decision unlike the ALJ in this case. *Id.* at 650. *Wilder* held that ALJs are not required to "name and discuss every Listing in their written decisions. Such a requirement would be particularly unreasonable where, as here, the claimant does not identify a Listing at the hearing, and her attorney even conceded that she does not meet or equal a Listing." *Id.* at 652. While Mark does not dispute that his attorney did not specifically argue in favor of Listing 1.15 at the hearing, unlike the ALJ in *Wilder*, the ALJ here specifically identified the listing at issue but then found that it was not met or equaled. By including such a finding in her decision, the ALJ had a duty to "provide a logical bridge between the evidence and [her] conclusions," which she failed to do through her conclusory finding that Listing 1.15 was not met or equaled. *Jarnutowski*, 48 F.4th at 773.

In finding that the ALJ failed to offer "more than a perfunctory analysis," the Court is not making any findings as to the merits of the Parties' respective claims regarding the sufficiency of the medical evidence and whether Mark can meet Listing 1.15 on remand. As mentioned, the Parties each offer various arguments about the record evidence and whether Mark meets the

listing's criteria, but this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. In doing so, the Court is limited to reviewing the grounds embraced by the ALJ. *See Stephens*, 888 F.3d at 327; *Kastner*, 697 F.3d at 648. For the reasons stated above, the Court concludes that remand is required so that the ALJ can adequately explain her finding that Mark did not meet or equal Listing 1.15.

### B. Other Arguments

Having found that remand is necessary for the reasons detailed above, the Court declines to address Mark's remaining arguments. Mark may raise his other concerns on remand.

### IV. CONCLUSION

For the reasons explained above, the Court **REVERSES** the ALJ's decision denying Mark benefits and **REMANDS** this matter to the Social Security Administration. Final judgment shall issue accordingly.

**SO ORDERED.**

Date: 9/28/2023

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email